B. B. REAGAN et al., Appellants, v. COUNTY COURT OF IRON COUNTY; BUFORD et al., Judges; LEWIS, Treasurer; and IRON COUNTY BANK.

Division One, March 1, 1910.

1. **COUNTY DEPOSITARY: Highest Bidder: Discretion of County Court.** Under the statute the county court is not bound to accept as the depositary of the county funds the bank which makes the highest bid. The court has a discretionary power in determining to which of the several bidding banks it will award the funds. That discretion is lodged in the court by the proviso of the statute (Sec. 6819, R. S. 1899) which says that "the court shall have the right to reject any and all bids."

2. **PROVISO IN STATUTE: Purpose.** The whole of a statute, including the proviso, must be so construed as to give force and effect to the act as a whole, not overlooking, however, the purpose of the proviso. That purpose is to take back or remove a restriction imposed by so much of the statute as precedes it.

3. **COUNTY DEPOSITARY: Highest Bidder: Bond: Interest: Discretion in County Court.** The statute gives the county court, in selecting among banks the one it will designate as the depositary of the county funds, the right to consider bids from all standpoints, and not merely from the standpoint of the highest rate of interest offered or tendered by any particular bank. Nor is that discretion altered or lessened by the fact that the successful bidder must give a satisfactory bond. Though the county may be protected against ultimate loss by suit thereon, the county court has the right to consider whether or not the funds would at all times be subject to check for the use of the county

or several school districts, and an action on the bond does not always guarantee that the funds will at all times be on hand with the depositary, subject to be checked out.

4. ————: **Discretion of County Court: Abuse.** A proper exercise of the discretion of the county court in choosing a depositary of the county funds will not be reviewed by the courts of law.

5. ————: ————: ————: **Reasonable Exercise.** Two banks filed bids to become the county depositary. One offered to pay two per cent interest on daily balances, and the other four and three-eighths per cent. The higher bidder had its attorney present when the bids were opened. He insisted that the bids be opened on the day named at high noon, and that was done; he insisted that the award be made at once; the court wanted further time to consider, but in obedience to his insistence the award was made before adjournment for dinner, and to the lowest bidder. The unsuccessful bank had been recently organized; the plaintiffs are mostly persons interested in that bank; its capital stock was $15,000, half paid up; it was running its business in the back of a hardware store; its cashier was unknown to the county court, had recently come from another State, and another business. The other bank had for some years been the county depositary; its officers and their responsibility were known to the court. *Held*, that if investigation should have been made by the court, the unsuccessful bidder is to blame that none was made, and under the circumstances there is no showing of an improper exercise of the court's discretion.

6. ————: **Awarding Funds: Hour and Adjournment.** A bank which has filed a timely bid to become county depositary has a right to insist that the bids be opened at noon on the day fixed, but it has no right to insist that the award be immediately made by the court without a recess or adjournment for consideration or an investigation of the responsibility and surroundings of the bidders.

Appeal from Iron Circuit Court.—*Hon. Joseph J. Williams*, Judge.

AFFIRMED.

*Geo. D. Reynolds* and *Geo. V. Reynolds* for appellants.

(1) It was the duty of the county court to designate as the county depositary the banking corporation

or individual banker offering to pay to said county "the largest rate of interest per annum." Ever since 1889, when it was first made the duty of the county courts to let out the county funds, the law has ordered that they be let to the highest bidder, to the bidder offering the largest premium or "the largest rate of interest per annum." Laws 1889, p. 81; R. S. 1889, secs. 3212 to 3222; Laws 1891, p. 103; Laws 1895, p. 126; R. S. 1899, secs. 6817 to 6829; Laws 1901, p. 101. (2) This law, in sec. 6819, R. S. 1899, is mandatory, and does not vest discretion. Where a law requires the letting to "the lowest responsible bidder," or gives the right "to select the bid most advantageous to the State," or city, or to let the contract "at such price as the board may deem best calculated to secure the object required," or gives the board a right "to reject any and all proposals as may be deemed best to the interests of the State," or where the law requires the letting "to the lowest reliable and responsible bidder," the body authorized to act has discretion; but when the command of the law is that the letting shall be to the "lowest" or to the "highest bidder," without any qualifying words, there is no discretion left to be exercised. This is the effect of our law, provided only, that the highest bidder is, in the judgment of the court, high enough. High, Extraordinary Legal Remedies, sec. 92; Commonwealth ex rel. v. Mitchell, 82 Pa. St. 343; People v. Dorsheimer, 55 How. Pr. 118; State ex rel. v. McGrath, 91 Mo. 386; State ex rel. v. Jones, 155 Mo. 570; Brady v. Mayor, 20 N. Y. 312; Appleby v. Mayor, 15 How Pr. (N. Y.) 423; Dickenson v. Poughkeepsie, 75 N. Y. 65; People v. Contracting Board, 46 Barb. (N. Y.) 250; Kelley v. Chicago, 62 Ill. 279; Boran v. Commissioners, 21 Oh. St. 311; Ross v. Board of Education, 42 Oh. St. 374; Bank v. Stranathan, 43 Kan. 618; Dillon, Mun. Corp., sec. 98; Henry County v. Salmon, 201 Mo. 169. (3) The requirement

of section 6819 of this law that the award shall be to
the one "offering to pay the highest rate of interest
per annum," is positive. It is a canon of construction
of universal recognition that every positive require-
ment, which, if disregarded, would necessarily defeat
the object of the statute, is to be held mandatory, and
when the prescribed requisites are for the protection
and advantage of the citizen and disregard of them
affects the citizen unfavorably or unjustly, they are
to be held to be mandatory. Rose v. Trestrail, 62 Mo.
App. 358; State ex rel. v. St. Louis, 158 Mo. 510;
Hall v. Schoenecke, 128 Mo. 668; Hope v. Flentge, 140
Mo. 401. (4) If the proviso in section 6819, giving
the court the right "to reject any and all bids," is to
be construed as authorizing the county court to reject
the bid of the one offering the highest rate of interest
and to accept the bid of the one offering to pay a
lower or the lowest rate of interest, then it is incon-
sistent with the body of the law, is in conflict with its
spirit, and is repugnant to the whole scheme, as laid
down by article 6. If to be so construed, it is void.
Endlich on Interp. Stat., sec. 185. But it is, if possible,
to be so construed as to be in harmony with the whole
law, the intent of which obviously is to secure the
largest premium or highest rate of interest for the
privilege of holding on deposit the county funds. It
is a familiar rule of construction that words in a stat-
ute, which, if interpreted literally, destroy or pervert
the manifest purpose and object of the statute, are to
be disregarded; common sense and good faith are the
leading characteristics of all interpretations. St. Louis
v. Herthel, 14 Mo. App. 467; Bank v. Haywood, 62 Mo.
App. 556; State ex rel. v. Slover, 126 Mo. 652; Ross
v. Railroad, 111 Mo. 18; Bank v. Skeen, 101 Mo. 687;
State v. Heman, 70 Mo. 441; State v. Heman, 70 Mo.
451; Cole v. Skrainka, 105 Mo. 310; Kane v. Railroad,
112 Mo. 39; Connor v. Railroad, 59 Mo. 293. Of ne-
cessity the strict letter of the law must yield to the

manifest intent. Riddick v. Governor, 1 Mo. 147; State ex rel. v. Emerson, 39 Mo. 89; Heman v. McNamara, 77 Mo. App. 10. (5) The county court is to exercise a wise discretion in seeing that the county funds are safe, when let on deposit; that they are on deposit with a safe depositary. The law itself, by section 6820, provides for this in requiring and specifying the kind of bond to be exacted, and authorizes the county court to withhold the award until a proper bond is given or to withdraw the fund, if, for any reason, the security given falls below what the county court deems safe. This is the expression of the legislative intent as to how the county funds are to be secured and safeguarded, and it disposes of the contention that the county court, in passing on the bid, at which time it does not have the question of the bond before it, has any right to take into consideration the solvency of the bidder. Boran v. Com., 21 Oh. St. 311. (6) If any discretion was vested in the court, the facts show that it was abused, and the award made, not as a matter of judgment, but arbitrarily and without lawful basis. This amounts to abuse of discretion and is within the corrective control of the courts. State ex rel. v. Board of Public Schools, 134 Mo. 307; St. Louis v. Weitzel, 130 Mo. 600; St. Louis v. Mfg. Co., 139 Mo. 570; People ex rel. v. Gleason, 121 N. Y. 631; Brady v. Mayor, 20 N. Y. 312; McDonald v. Mayor, 68 N. Y. 23; Dickinson v. Poughkeepsie, 75 N. Y. 65.

*C. P. Damron* for the county court; *Wm. R. Edgar, M. L. Clardy* and *C. D. Corum* for the bank.

(1) The statute authorized the county court to exercise its reasonable discretionary powers. The county court did exercise reasonable and wise discretion, and under such circumstances the courts will not interfere by mandamus, injunction, prohibition, or in any other manner. State ex rel. v. Hawkins, 130 Mo. App. 41; State ex rel. v. Gregory, 83 Mo. 137; State

ex rel. v. Fort, 180 Mo. 108; High on Extra. Leg. Rem.,
secs. 24, 92, 94; Mechem on Pub. Officers, sec. 991.
(2) Where discretion is vested in a public officer the
courts will not direct how it shall be executed nor
what conclusion or judgment shall be reached, in the
absence of an arbitrary abuse of power.  State ex rel.
v. Jones, 155 Mo. 576; State ex rel. v. McGrath, 91 Mo.
386; State ex rel. v. Francis, 95 Mo. 44.  (3) The fact
that the successful bidder must file a bond for the faith-
ful performance of its duty does not deprive the county
court of discretionary power, nor preclude it from re-
jecting any bid.   State ex rel. v. Hawkins, supra;
Commonwealth v. Smith, 92 Pa. St. 349; People v.
Dorsheimer, 55 How. Pr. 118.

GRAVES, J.—Whilst the pleadings in this case
are lengthy, the facts thereof, and the issues therein
can be stated in short form.   Under the law, Revised
Statutes 1899, section 6817, the county court of Iron
county advertised for bids from such banks or bank-
ers as might desire to become the county depositary.
In response to such notice two banks of the county
filed their bids.  Each complied with the law in filing
such bid.   When the bids were opened it was found
that the Bank of Ironton had offered to pay four and
three-eighths per cent interest on the daily balance of
county deposits, and the Iron County Bank had offered
to pay two per cent on such daily balances.   The latter
bank also offered to receive at par items on other
banks, and to issue drafts upon other banks free of
charge whenever requested by county officials.   The
bids were opened at the hour designated by law, and
owing to the insistence of counsel for the Bank of
Ironton, the matter was passed upon by the county
court before adjournment for dinner.   The statute
prescribes that the bids shall be opened at high noon,
and they were so opened.   It would appear that mem-
bers of the court desired time to look into the matter,

but counsel for the Bank of Ironton insisted that they should then and there make the award. Following this insistence the award was made, but to the Iron County Bank rather than to the Bank of Ironton. Relators, as taxpaying citizens, many of whom were interested in the defeated bank, brought this action, which action and the proceedings, *nisi*, are well set forth in a written opinion filed in the cause by the chancellor, thus:

"The plaintiffs, by their petition in this case, and in their capacity as taxpaying citizens of Iron county, Missouri, ask this court for a mandatory injunction to restrain and enjoin the county treasurer of said county from hereafter depositing the county funds, or district school funds, or capital school funds, or any part thereof, of said county, in the Iron County Bank, under, and by virtue of an order of the county court of said county, designating and selecting that bank, as the depositary of such funds, made on the first day of May, 1905, for the then ensuing two years; to restrain and enjoin the Iron County Bank from receiving or retaining such funds, or any of them; requiring the treasurer to withdraw all of such funds, as may, by virtue of said order of court, have been, by him, deposited in said bank; restraining and enjoining the county court of said county from further recognizing its said order of May 1, 1905, and requiring it to proceed, under the statute, in such cases made and provided, to designate and select some depositary of said funds. The petition, as originally drawn, contained no averment of any abuse of discretion, on the part of the county court, in the making of the order designating and selecting the Iron County Bank as the depositary of said funds, nor did it, in terms, or by implication, charge any partiality or improper motive upon the part of that court. On a demurrer being interposed, and sustained, the plaintiffs amended their petition, by inserting an allegation to the effect that the action of the county court in making the order desig-

nating and selecting the Iron County Bank as the depositary of said funds, was arbitrary, and without any good, sufficient or lawful cause, and in violation of its duty, and of the law. This amounted to no averment of any substantial fact, tending even by necessary implication, to charge any abuse of discretion or any partiality, or corrupt or improper motive, on the part of the county court, in designating and selecting the Iron County Bank as the depositary of the funds, or in rejecting the application and bid of the Bank of Ironton.

"At the time of the amendment, counsel for the plaintiffs distinctly stated to the court that the plaintiffs neither charged nor intended to charge that there had been any partiality, or improper motive, on the part of the county court in accepting the bid of the Iron County Bank, and in rejecting the bid of the Bank of Ironton, and informed the court that they relied upon the sole contention that the county court was, as matter of law, bound to accept the bid of the Bank of Ironton, and to reject that of the Iron County Bank, for the reason that the Bank of Ironton offered the highest rate of interest, and that the county court had no discretion in the matter, and could exercise none.

"Notwithstanding the fact that this court sustained the demurrer to the original petition, on the ground that no abuse of discretion or partiality, or improper motive on the part of the county court, in accepting the bid of the Iron County Bank, and in rejecting that of the Bank of Ironton, was alleged, and notwithstanding the further fact that the amendment made it no better, in that respect, the court proceeded to hear the case, with the intent to order an amendment of the petition to conform it to the facts proved, so that appropriate equitable relief might be granted, if the evidence should warrant it.

"On the trial the evidence wholly failed to disclose any abuse of discretion, partiality, corruption,

or improper motive, on the part of the county court, in the acceptance of the bid of Iron County Bank or in the rejection of the bid of the Bank of Ironton.

"Upon the pleadings and evidence in the case this court is of the opinion that the statute—Art. 6, chap. 97, R. S. 1899—clothes the county courts of the several counties of this State with the power and authority to exercise a proper discretion, in the matter of the acceptance or rejection of bids of banks or bankers for the county moneys; that the authority given by section 6819, Revised Statutes 1899, to reject any and all bids is a plain grant of discretion, authorizing a proper consideration of all bids, with the power to reject any or all, and to accept such bid, as in the judgment of the court may be the best, in view of all the facts within the knowledge of the court.

"The plaintiffs having failed to allege or prove any abuse of such discretion, or any partiality, or corruption, or improper motive on the part of the county court of Iron county, are not entitled to the relief sought by them, and their bill will be dismissed."

The case was fully tried out upon oral testimony, none of which imputed bad motives to the members of the county court. In fact such theory was openly disclaimed by counsel for relators. Judgment went in accordance with the written opinion above quoted, and relators bring the case here by appeal. Such sufficiently states the case.

I. In this case we are met first with the proposition that there was an imperative duty upon the part of the county court to award the contract to the highest and best bidder for the county funds. In other words, it is claimed that there is no discretion in the county court. The case is one of first impression in this court. That is to say, this particular statute has not been a subject of construction by this court, whatever we may have said as to other statutes. The importance of the

question demands thorough consideration and this we have attempted to give. We are not of opinion that there was an imperative duty upon the part of the county court to grant the contract to the party making the highest bid for the use of the county funds. We are of the opinion that there is a discretionary power in the county court in determining the award to be made in such case. It may be true that a wrongful and unauthorized discretion might be the subject of review, but the point now to be discussed is whether or not, under the statute, there is a discretion at all. The other question we will discuss later in view of the proven facts. The statute, section 6819, as amended in 1901, under which such awards are made, eliminating surplus language, reads:

"It shall be the duty of the county court . . . to select as the depositary of the county funds, district school funds and capital school funds, not otherwise invested according to law, the banking corporation, association or individual banker offering to pay to said county the largest rate of interest per annum for said fund: Provided, that the court shall have the right to reject any and all bids."

The trouble arises between the terms of the body of the act and the proviso thereto. As to this section 6819 the Act of 1901 made no material change. The verbiage used is a little different from the original section, but in substance it is the same. The proviso is the same in both statutes. As it originally stood the proviso is there for what it is worth, just as it is there now. That the purpose of this proviso is to lodge discretion in the county court, we have no doubt. The words thereof preclude a different view. Under it the court has the right "to reject any and all bids." From any standpoint it means discretion. If the law meant that after advertising for bids the county court must accept the highest bid, then such court could not reject all bids. The very fact that the proviso allows

the rejection of all bids demonstrates that there was intended to be left a discretion in the county court. But further this proviso allows the county court not only to reject all bids, but goes further and allows it to reject "any and all bids." Such provision but emphasizes the fact that the Legislature was lodging a discretion with the county court. Grant it that the provision in the body of the act might be construed to mean that there 'was an imperative duty upon the part of the county court to designate the highest bidder as the county depositary, yet the very purpose of a proviso, under the law, is to modify the broad and general terms of the act to which it is attached. This question we have recently reviewed in the case of Brown v. Patterson, 224 Mo. 639.

A fundamental rule of construction is that the whole act, including the proviso, must be construed so as to give force and effect to the act as a whole, not overlooking, however, the purpose of a proviso. This purpose has well been defined by the New York court, as mentioned in the Brown case, supra, thus: "A proviso in a grant or enactment is something taken back from the power just declared. The grant or enactment is to read, not as if the larger power was ever given, but as if no more was ever given than is contained within the terms or bonds of the proviso."

The terms of the proviso limit the general terms of the broad act and it can make no difference as to the force and effect of a proviso, whether its purpose is to limit the terms of a statute 'which grants rights, or whether it limits the powers of a statute which restricts rights. It is argued in this case that the first provision of this statute restricts the rights of the county court, but granting that to be true, the proviso, which is the later legislative expression, removes some of the restrictions.

Construing this statute as a whole we have no doubt that discretionary power is lodged in the county

court in the matter of selecting a county depositary. Nothing in Henry County v. Salmon, 201 Mo. l. c. 169, cited by appellant, is to the contrary. Such was the holding in State ex rel. v. Hawkins, 130 Mo. App. 41, by BLAND, P. J., in the St. Louis Court of Appeals, after this case was tried below. Such is the reason of the thing. Whilst it is true that it provides for a bond, and the bond may preclude the county from ultimate loss at the end of a lawsuit, yet it cannot be said that the county court, the agent of the county, should be required to place the public funds in the hands of unknown and irresponsible institutions simply because such institutions offered a higher rate of interest, and tendered a good bond. With the county there is something more than the mere ultimate recovery of the county and other public funds from the bondsmen. Such funds are needed in the progress of municipal affairs, and this must be held in view by the county court. No better illustration can be cited than Henry County v. Salmon, supra. There, the county, after prolonged litigation, obtained from the sureties on the depositary bond the funds of the county, but how about the county, school and road finances in the mean time? To our mind the very purpose of this proviso was to give the county court a right to consider the bids from all standpoints and not merely from the standpoint of the highest rate of interest offered or tendered by any particular applicant. Such court should consider not only the rate of interest offered, but also the fact whether or not the funds would at all times be subject to check for the use of the public interests of the county. An action upon a solvent bond does not always meet the contingency of the municipality.

We, therefore, hold that under this statute there is a discretion in the county court in the selection of a county depositary.

II. That the proper exercise of discretion will not be reviewed, we take to be unquestioned law. Not-

withstanding scanty pleadings upon the part of rela-
tors the trial court heard evidence as if the case was
being tried upon the theory of a failure to exercise
proper discretion by the county court in the selection
of a county depositary. It is not necessary for us to
pass upon some questions urged, for the reason that
whatever be our view of the law, it would not change
this case. It does appear that this case was tried
by relators largely upon the theory that it was the
imperative duty of the county court to award the con-
tract to the highest bidder. The views above express-
ed preclude this idea. But if we even go to the ques-
tion of the abuse of discretion upon the part of the
county court, for which there may be remedy, yet
under the facts, such abuse of discretion is not in this
case.

Under the facts the Bank of Ironton had its at-
torney present when the bids were opened. He in-
sisted, as under the law he had a right to insist, that
the bids be opened on the day named at high noon;
he insisted, as under the law he did not have the right
to insist, that the award be made at once on the bids;
at least two members of the court wanted further time
to consider, but in obedience to the insistence of coun-
sel for the unsuccessful bank, they passed upon the
question without adjourning for dinner. From the evi-
dence it appears that the Bank of Ironton had only
been recently organized; that the relators are largely
persons interested in this bank; that its capital stock
was but $15,000, with only half thereof paid up; its
officers were unknown to the court; it was running
its business in the back end of a hardware store; its
cashier was unknown to the county court; his experi-
ence in banking was unknown; he came from another
state and another business, i. e., the patent medicine
business; the other bank had been the county deposi-
tary; its officers and their responsibility were known
to the county court; for some years the public funds

had been deposited there. Under these circumstances counsel for the Bank of Ironton was insisting that the decision for the award be rendered before the court adjourned for dinner. If investigation should have been made, relators or the Bank of Ironton are responsible for such failure. It is hardly necessary to discuss this question in view of the admissions made by relators as to the good faith of the county court. However, even if the reasonable exercise of discretion be a vital question in the case at bar, we could not say that there had been a breach of such discretion under the facts.

The judgment is, therefore, affirmed. All concur.